# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SARA STAR,

     **Plaintiff,**

     **v.**                                    **Case No. 21-CV-755-SCD**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

     **Defendant.**

---

## DECISION AND ORDER

---

      Sara Star applied for social security disability benefits based on a combination of physical health and mental health issues. Her claim was denied, and the denial was affirmed by an administrative law judge (ALJ) employed by the Social Security Administration (SSA). The Appeals Council vacated the initial ALJ's decision and remanded to a new ALJ with instructions to further consider the impact of Star's mental limitations on her residual functional capacity (RFC). The second ALJ found that in spite of moderate limitations in Star's mental residual functional capacity (MRFC), Star would still be able to work a number of different jobs, and accordingly affirmed the SSA's decision to deny Star benefits. The Appeals Council affirmed.

      Star now seeks judicial review of the ALJ's decision because she believes that the RFC did not adequately encapsulate her mental limitations and that the ALJ failed to address significant medical evidence. She also argues that she is entitled to a new hearing because the

structure for removing the Commissioner of the SSA violates the United States Constitution.[1] Kilolo Kijakazi, the Acting Commissioner of the SSA, maintains that the ALJ did not commit reversible error in denying Star's claim, substantial evidence supports the ALJ's decision, and Star is not entitled to relief on her constitutional claim. I agree with Kijakazi on each point; thus, I will affirm the denial of disability benefits.

## BACKGROUND

Plaintiff Sara Jo Star was born in 1964. R. 183. She completed high school and two years of college. She has an associate's degree in marketing, communications and graphic design. R.132. From 2007 to 2013, Star worked in several call centers in a mostly sedentary role. R. 133-36. She quit her last position as a quality assurance analyst at a call center because she claims that she was in chronic pain, suffered from migraines, and felt mentally overwhelmed at her own forgetfulness of standard work procedures that she had performed for years. R. 137. She also struggled with gastrointestinal symptoms like diarrhea that interfered with her ability to remain on calls and perform her job for set periods of time without interruption. R. 138. Additionally, she claimed that her frequent doctors'

---

[1] Star concedes that her argument has been rejected by nearly every district court to have considered it; she presents it here to preserve the issue on appeal. *See* ECF No. 20 at 16 (collecting cases); *see also* ECF No. 27 at 6-7 (collecting cases). Indeed, I have rejected the same argument at least six times in the last six months. *See Robinson v. Kijakazi*, No. 21-CV-238-SCD, 2022 WL 443923, 2022 U.S. Dist. LEXIS 25681 (E.D. Wis. Feb. 14, 2022); *Timm v. Kijakazi*, No. 21-CV-131-SCD, 2022 WL 843920, 2022 U.S. Dist. LEXIS 50594 (E.D. Wis. Mar. 21, 2022); *Swiecichowski v. Kijakazi*, No. 21-CV-249-SCD, 2022 WL 2069251, 2022 U.S. Dist. LEXIS 104593 (E.D. Wis. May 27, 2022); Decision & Order, *Metoxen v. Kijakazi*, No. 21-CV-341-SCD (E.D. Wis. June 21, 2022); *Everson v. Kijakazi*, No. 21-CV-716-SCD, 2022 WL 3656462, U.S. Dist. LEXIS 152810 (E.D. Wis. Aug. 25, 2022); *Tallar v. Kijakazi*; 21-cv-611-SCD (E.D. Qis. Aug. 30, 2022). Star's argument fails for the same reasons the argument failed in those cases—namely, that there is no causal connection between her adverse decision and the SSA's unconstitutional structure. *See, e.g., Robinson*, 2022 U.S. Dist. LEXIS 25681, at *12–19. Accordingly, she is not entitled to relief on her constitutional claim.

appointments prevented her from working regular hours and required her to use all her vacation days for medical treatment. *Id.*

Star applied for disability benefits with the SSA after previously being denied coverage for a claim filed in 2005. *See* R. 167, 400. She alleged that since September 13, 2013, she has been disabled and unable to work as a result of several medical conditions: fibromyalgia; swollen left leg; blurred vision – inflammation in eyes; chronic sinusitis with facial pain; chronic migraines; hip bursitis and leg pain – chronic bursitis; bulging disc area in lower back-pain; fatigue and chronic pain; emotional distress due to limitations; neck and back pain. R. 403.

As part of the application process, two state psychologists, Dr. Gilyot-Montgomery and Dr. O'Brien, evaluated Star's MRFC based on her medical records. R. 178-80, 198-200. They found that she was moderately limited in several functions related to her concentration and persistence. *Id.* Dr. Gilyot-Montgomery found that Star "could perform simple and some detailed tasks given routine breaks" but noted that "[f]ast-paced tasks may reduce her stress tolerance" and that she "would do best with routine tasks and clear expectations." R. 179-80. Dr. O'Brien reviewed the psychological records at the reconsideration level and adopted substantially the same findings as Dr. Gilyot-Montgomery, except she found that Star was *not* significantly limited in her ability to perform activities within a regular schedule, maintain regular attendance and be punctual within customary tolerances.

The SSA denied Star's claim initially and on reconsideration. R. 233, 242. It found that while there was not enough evidence in the record to show whether Star would be able to continue her past work, her condition was not severe enough to keep her from working other jobs. R. 242-43. Star requested a hearing before an ALJ who affirmed the

Administration's decision. The Appeals Council vacated the decision and remanded the case to a new ALJ to further consider Star's mental limitations in determining her RFC. R. 230. During the hearing, Star testified that the primary symptom preventing her from working was chronic pain from a combination of her conditions, including her back pain, pain resulting from her hip surgery, and migraines. R. 137, 143. Additionally, she testified about her intermittent struggles with constipation and diarrhea. R. 141-43. She also noted that, secondary to those issues, she felt emotionally and mentally overwhelmed by work while experiencing those symptoms. R. 137-38. Star indicated she felt humiliated at work due to her occasional accidents resulting from her gastrointestinal issues, and that she was frustrated and depressed at her own inability to perform her job due to her symptoms. R. 145. She stated that she tried counseling and anti-depressants to alleviate her mental health symptoms. R. 145-46. In addition, Star reported that her fibromyalgia medication, Gabapentin, negatively impacted her memory and mental health. R. 145.

Star also testified about her day-to-day activities and how her conditions impacted them. Star claimed that, during a normal day, she would mostly sit on the couch and watch TV, read, do genealogy, or listen to an audiobook while changing her position occasionally to alleviate pain from sitting in the same position for too long. R. 148-49. She would elevate and ice her leg to help with pain. R. 149. She was able to dress herself, make small meals, do small household chores, grocery shop, drive, go to church, and attend meetings with her 12-step recovery program. *See* R. 149-51.

The ALJ also heard testimony from a vocational expert. The vocational expert (VE) testified that an individual of the claimant's age and education with an RFC functionally equivalent to the one that the ALJ ultimately assigned to Star would be unable to perform

4

Star's past jobs. R. 158. The VE did state, however, that such an individual would be able to work in several jobs available in significant numbers nationally, including as a mail clerk, laundry sorter, or storage facility rental clerk. R. 158-59. She also indicated that an individual missing more than one day of work per month or being productive less than eighty-five percent of the day would be precluded from competitive employment. *Id.*

The ALJ applied the familiar five-step process and ultimately concluded that Star was not disabled under the Social Security rules. 20 C.F.R. 404.1520. At the first step of the assessment, the ALJ determined that Star had not been engaged in substantial gainful activity during the relevant period of time. R. 17. At step two, he found that Star suffered from several severe impairments, including fibromyalgia, chronic pain syndrome, lumbar and cervical degenerative disc disease, bilateral hip disorder, right knee disorder, headaches, obstructive sleep apnea, obesity, major depressive disorder, and adjustment disorder with anxiety. R. 17-18. He found that the rest of Star's impairments were non-severe because they did not significantly limit her ability to perform basic work activities for a consecutive period of at least twelve months. R. 19-20. At step three, the ALJ found that Star's impairments did not equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20. With respect to mental functioning, the ALJ found that Star had moderate limitations with regard to the following paragraph B categories: understanding, remembering, and applying information; concentrating, persisting, or maintaining pace (CPP); and adapting or managing oneself. *Id.* He found only a mild limitation in the category of interacting with others. *Id.*

The ALJ outlined many physical restrictions in Star's RFC, and explained her mental limitations as follows: "[Star] could perform simple and routine tasks. She could maintain

attention and concentration for two-hour segments. She could make simple work-related decisions. She could tolerate occasional changes in a routine work setting." R. 22. In reaching this conclusion, the ALJ considered Star's testimony of widespread pain, migraines, and mental distress during this period. R. 22-23. He noted that she had testified that she was capable of doing home exercises, watching TV, performing household chores, shopping, and driving. *Id*. He also considered Star's medical records, which reflect that she frequently sought medical treatment for neck pain, back pain, headaches, anxiety and depression, fibromyalgia, hip pain, and sleep apnea. *See* R. 23-29. Additionally, he noted that many of Star's doctors regularly reported her as having a "normal, independent gait," full strength and sensation in her upper and lower extremities, and the ability to manage some of her symptoms with therapy, home exercises, and other conservative measures. R. 29. Several recorded that she appeared alert, oriented, cooperative, and in no acute distress. *See* R. 23-29. The ALJ observed that the testimonial evidence also demonstrated that Star was capable of performing complex tasks like paying bills and managing a savings account, and that several doctors noted her memory as intact and her concentration and attention as normal. R. 29. He stated that, in consideration of all of those facts, a more restrictive RFC was not warranted. *Id*.

The ALJ also considered the MRFC worksheet completed by the state psychologists. *See* R. 178-80, 198-200. The ALJ gave those findings "some weight," but because the consultants did not listen to the claimant's testimony, he restricted Star to "no more than simple-work related decisions, given her reports of being overwhelmed." R. 30. The ALJ gave greater consideration to objective factors such as Star's imaging studies, lab work, physical exams, course of treatment, and reports of her daily activities than he gave to the subjective opinion testimony of parties that either did not personally interact with Star, like the state

psychologists, or were not particularly knowledgeable about the disability program, like Star's ex-husband and treating doctors. *See* R. 29-30.

After defining and explaining the RFC, the ALJ proceeded to steps four and five of the review process. The ALJ determined that although Star was unable to perform her previous work due to her medical conditions, there were other jobs in significant numbers in the national economy that she could perform at her current, age, education, experience level, and RFC. R. 30-31. The ALJ ultimately found Star not disabled and as such, he affirmed the SSA's decision to deny her claim for benefits.

The SSA Appeals Council denied Star's request for review, *See* R. 1-3, making the ALJ's decision a final decision of the Commissioner of the SSA, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On June 18, 2021, Star filed this action seeking judicial review of the decision denying her claim for disability benefits under 42 U.S.C. § 405(g). *See* ECF No. 1. United Stated District Judge J.P. Stadtmueller reassigned this case to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 6, and 9. Star filed a brief in support of her disability claim, ECF No. 20; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 24; and Star filed a reply brief, ECF No. 27.

## APPLICABLE LEGAL STANDARDS

Under 42 U.S.C. § 405(g), a plaintiff may seek judicial review of a final administrative decision of the Social Security Commissioner. In such a case, a judge has the power to affirm, reverse, or modify the Commissioner's final decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). The court can remand a matter to the Commissioner in two ways: it may remand

"in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision," or it "may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision." *Melkonyan*, 501 U.S. at 99–100. Here, Star seeks remand in conjunction with a decision reversing the Commissioner's decision. ECF No. 20 at 8.

The court will only reverse the Commissioner's final decision if the denial of disability benefits is "based on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence simply means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The court "may not re-weigh the evidence or substitute its own judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). It is limited to evaluating whether the ALJ has built an "accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

In this case, Star challenges only the ALJ's findings regarding her RFC. She presents three key reasons in support of reversal. First, she argues, the ALJ did not give due consideration to the state psychologists' assessments in determining her RFC. Second, she claims that the ALJ erred by considering only the impact of her medical *symptoms* on her ability to perform certain jobs and not considering the aggregate effect that her numerous doctors' appointments would have on her absenteeism. Finally, she alleges that the Social

Security Commissioner holds her position unconstitutionally, and as such, no ALJ working under her authority can permissibly take action on claims for disability benefits.

## I. Substantial Evidence Supports the ALJ's RFC Assessment.

Star disputes the ALJ's findings regarding her RFC. The RFC is the most a person can do despite that person's limitations. 20. C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC based on "all the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The ALJ here determined that Star had the RFC to perform light work with certain non-exertional limitations. Star has three issues with the RFC: first, she believes that the RFC should have included two specific limitations mentioned by the state psychologist; second, she argues that the ALJ did not address the findings in Section I of the state psychologists' MRFC worksheet regarding her concentration and persistence limitations; third, she argues the RFC did not contain a limitation corresponding to the ALJ's step-three finding that Star had a moderate limitation in the CPP category.

### A. The ALJ did not err in declining to adopt limitations proposed by the state psychologists.

Star first contends that the RFC should have contained additional limitations precluding her from fast-paced work and explicitly requiring only routine tasks and clear expectations. ECF No. 20 at 10. She derives these proposed limitations from the MRFC worksheet narrative findings recorded by state psychologist Dr. Gilyot-Montgomery (and adopted by Dr. O'Brien on reconsideration), stating that fast-paced tasks "may reduce stress tolerance," and that Star "would do best with routine tasks and expectations." R. 179-80. Star argues that failing to include corresponding limitations in the RFC creates a conflict between the RFC and medical opinion evidence and therefore requires a more detailed explanation of

the RFC than the ALJ provided in his opinion. I disagree for two reasons. First, the doctors' observations cannot be properly characterized as required limitations, and as such, do not create a conflict between the RFC and the evidence. Second, even if the statements were phrased in a more definite manner, an ALJ is not required to follow all of the doctors' suggestions in the RFC as long as that RFC is supported by substantial evidence.

Dr. Gilyot-Montgomery did not explicitly state that Star *cannot* work in a fast-paced environment and must have *only* routine tasks and expectations; instead, she expressed that those circumstances would likely be best for Star. An opinion that a particular work condition would be best for a person does not mean that the person is entirely incapable of working in less favorable circumstances. *Hofstad v. Kijakazi,* No. 21-CV-352-SCD, 2022 WL 3057243, at *5 (E.D. Wis. Aug. 3, 2022) ("receiving job-coaching services would be ideal but not required. Because Dr. Meyer's job-coaching comment was not clearly a medical opinion, the ALJ didn't need to address it."); *Rumsey v. Saul*, No. 20-cv-257, 2021 WL 1921832, at *5 (E.D. Wis. May 12, 2021) ("Dr. Schinke's opinion is equivocal in that it opines only that Rumsey 'may have' various restrictions"); *Long v. Berryhill*, No. 16 CV 50060, 2017 WL 1427063, at *5 (N.D. Ill. Apr. 21, 2017) ("Dr. Carney made an ambiguous statement that plaintiff's absences 'may' be a problem on the job, but he never settled upon an opinion nor stated clearly that plaintiff's absences would prevent her from working."). Similarly, the narrative finding that Star "would do best with routine tasks and clear expectations" does not mean that she cannot perform other tasks.[2] *See Beaver v. Kijakazi*, No. 20-CV-1003-BBC, 2022 WL 601909, at *2-4 (W.D. Wis. Mar. 1, 2022) (finding that Dr. Gilyot-Montgomery's statement that a different social

_____

[2] Star also does not explain why the RFC limitations that "she could perform simple and routine tasks" and that she "could make simple work-related decisions" do not satisfy the narrative finding that she "would do best with routine tasks and clear expectations."

security claimant "would 'do best' with brief and superficial interaction" with others did not *require* limiting claimant to superficial interactions when other evidence suggested that plaintiff was "shy, but respectful" and had no difficulty getting along with others). As such, the narrative findings of the state psychologists are too vague to be considered required limitations for Star to function in a workplace.

Even assuming that the state psychologists intended for the narrative findings to require additional limitations in Star's RFC assessment, the ALJ does not have to adopt the doctors' opinions. The ALJ "must weigh the entire record," *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007), and the "final responsibility for determining a claimant's residual functional capacity" lies with the ALJ, who "need not adopt any one doctor's opinion." *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021) (internal citations omitted). An ALJ decides how much weight to give a medical opinion.

Here, the ALJ weighed the state psychologists' opinions and determined that because the psychologists did not hear Star's testimony, their opinions were entitled to only "some weight" R. 30. He gave greater weight to Star's testimony that she was capable of doing home exercises, watching TV, performing household chores, shopping, and driving. R. 22-23. He looked to Star's medical records, where doctors reported her as having a "normal, independent gait," full strength and sensation in her upper and lower extremities, and the ability to manage some of her symptoms. R. 29. He considered her doctors' opinions that she appeared alert, oriented, cooperative, and in no acute distress. *See* R. 23-29. He factored in her doctors' opinions that she appeared to have normal memory and concentration and Star's own testimony that she was able to perform complex tasks like paying bills and managing a savings account. R. 29.

The ALJ did not completely credit or discount the state psychologists' opinion; he was persuaded by other evidence in the record, including Star's hearing testimony and treatment history, that "[a] more restrictive residual functional capacity [was] not warranted." R. 29. For this reason, even if I were to find a conflict between the RFC and the medical opinion evidence, the ALJ still provided a logical explanation based on substantial evidence for why he deviated from the psychologists' opinions in the RFC assessment. Asking the court to find that the ALJ wrongly credited testimonial and treatment history evidence over the opinion of a non-treating doctor amounts to a request to reweigh the evidence. I cannot reweigh the evidence and find that a more restrictive RFC is required when the ALJ made such a determination based on substantial evidence.

**B.     The ALJ properly considered the checkbox findings of the state psychologists in the MRFC worksheet.**

Next, Star argues that the ALJ mistakenly glossed over the Section I checkbox findings in the state psychologists' MRFC worksheet and should have factored those findings in more heavily in the RFC.[3] An ALJ must consider the checkbox findings of a doctor, particularly where the narrative findings do not encapsulate the worksheet findings. *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (noting that worksheet observations are "medical evidence which cannot just be ignored," and that an ALJ may rely on narrative findings instead of checkbox findings where the "narrative adequately encapsulated and translates those worksheet observations."). While it is true that medical evidence cannot be ignored, it is also

---

[3]Star does not appear to argue that the ALJ committed legal error; she seems to argue that the ALJ disregarded substantial critical medical evidence that would have changed the RFC. *See* ECF. No. 20 at 12. I do not find that the ALJ disregarded this evidence. Even if Star had proven that this mistake amounted to legal error, any such error would be harmless because the finding of two doctors that a plaintiff is moderately limited in one CPP checkbox area would not drastically change the RFC.

true that "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). A court must not disturb the ALJ's findings as long as the ALJ has built an "accurate and logical bridge between the evidence and the result." *Beardsley*, 758 F.3d at 837.

Star argues that the RFC should have included additional limitations derived from Section I of the state psychologists' MRFC worksheet findings that she had moderate limitations in her ability to maintain attendance, complete a normal workday, and perform at a consistent pace. Star argues that *specific pieces of evidence* related to her CPP were disregarded, not that the RFC failed completely to address the moderate limitation in Star's CPP overall. Star does not (cogently) argue that the hypothetical posed to the VE and the RFC fail to account for her moderate CPP limitations; instead, she argues that the ALJ was required to include RFC limitations based on the state psychologists' findings that she was moderately limited in two CPP checkbox functions. As such, the question raised in this case is not whether the ALJ wrongly failed to incorporate Star's limitations, but a more preliminary question: were the purported limitations supported by the medical record at all? I find that because the ALJ had substantial evidence that Star was not limited in these two checkbox areas, he did not err by declining to include broader CPP limitations based on these areas.

The ALJ created some RFC limitations corresponding to the findings of the state psychologists, but not all of them. Dr. Gilyot-Montgomery noted in her MRFC assessment that Star had moderate limitations in four areas of concentration and persistence: (1) her ability to carry out detailed instructions; (2) her ability to maintain attention and concentration for extended periods; (3) her ability to perform activities within a regular schedule, maintain regular attendance and be punctual within customary tolerances; and

(4) her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 179.[4] The ALJ's RFC contained the following limitations corresponding with the first two categories: (1) she could perform simple and routine tasks; and (2) she could maintain attention and concentration for two-hour segments. R. 27.

Star first argues that the ALJ failed to consider the Section I checkbox findings of Drs. Gilyot-Montgomery and O'Brien at all. The ALJ's opinion demonstrates that he did in fact consider their opinions; he was just persuaded by other evidence in the record that he need not adopt those opinions wholly and uncritically. The ALJ explained in detail the evidence that persuaded him that the RFC assessment sufficiently accommodated Star's limitations. The ALJ stated that he considered Star's hearing testimony that she had difficulty concentrating and completing tasks, as well as her reports that she still prepared meals, drove a car, went shopping, paid bills and managed a savings account and a checkbook. R. 21. He noted that she could do home exercises, manage her personal care, do small house chores, and go to church and recovery meetings. R. 23. And contrary to Star's allegations, the opinion reflects that he *did* consider the checkbox findings, and in some areas, he agreed with them. He seemed to agree with both state psychologists' checkbox finding that Star was moderately limited in her ability to carry out detailed instructions because the RFC limited her to "simple and routine tasks" and "simple work-related decisions." R. 27. He also appeared to agree that Star was moderately limited in her ability to maintain attention and concentration for extended periods of time because he included a limitation requiring breaks every two hours. R. 27. The fact that the ALJ did not create specific limitations in the RFC corresponding to

---

[4] On reconsideration of Star's claim, state psychologist Dr. O'Brien adopted the same checkbox and narrative findings, except that she found that Star was not significantly limited in the third category. R. 199.

two moderate limitations noted in the MRFC worksheets does not mean that he did not consider the Section I findings at all.[5] In fact, the ALJ specifically mentioned the worksheet, R. 30, suggesting that he did consider the worksheet in his assessment; he just did not defer to each finding in it in the way that Star would like.

Next, Star's argument that the ALJ erred by not considering the medical opinions in Section I of the MRFC worksheet fails because the ALJ adequately explained why he gave little credence to the MRFC worksheet findings. In support of her argument that the ALJ wrongly disregarded MRFC checkbox findings, Star cites several cases in which a judge reversed an ALJ opinion where it did not include limitations in specific checkbox areas on an MRFC worksheet. *See* ECF No. 20 at 12, citing *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019), *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014). However, in each of those cases, the court reversed because the ALJ adopted *some* of the consulting psychologists' opinions without accounting for significant contrary findings in those opinions. *See Yurt*, 758 F.3d at 858-859 (finding reversible error where an ALJ "credited and indeed adopted" the consulting psychologist's opinion with respect to moderate checkbox limitations, but did not account for the narrative finding that the claimant could only handle an environment "where stress levels are limited."); *DeCamp*, 916 F.3d at 676 (rejecting argument that an ALJ adequately accounted for worksheet findings by adopting narrative finding that claimant was "capable of withstanding the demands of unskilled as defined by the SSA" without accounting for moderate checkbox limitations); *Varga*, 794 F.3d at 814

---

[5] It is also worth noting again that Dr. O'Brien found on reconsideration that plaintiff is not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 199. This means that the only CPP checkbox limitation that both state psychologists found to be moderate that *does not* have a corresponding limitation is the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.

(finding that the ALJ was required to address moderate CPP limitations found in an MRFC worksheet with which he "concurred"). Here, by contrast, that sort of impermissible cherry-picking is not present because the ALJ did not give significant weight to the MRFC worksheet at all. Instead, the ALJ decided to give the state psychologists' opinion little weight because he found other evidence more persuasive. As such, he was not required to include limitations in the RFC and hypothetical for the two specific checkbox findings at issue here.

Finally, Star does not explain how the current RFC does not accommodate the limitations found by the psychologists, nor does she provide alternative limitations that should have been included. In similar cases where a plaintiff "fails to describe the additional limitations the ALJ should have included," courts have found that a CPP error is harmless. *Turner v. Saul*, No. 20-C-998, 2021 WL 2134955, at *11 (E.D. Wis. May 25, 2021) (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)); *see also Wulz v. Saul*, No. 20-CV-390-WMC, 2021 WL 856880, at *4 (W.D. Wis. Mar. 8, 2021) (finding that the ALJ "certainly did not err by failing to account for [plaintiff's alleged anxiety] further in crafting [the] RFC" where the plaintiff did not specify "what additional nonexertional limitations the ALJ should have included.") It is difficult to assess whether the RFC excludes a necessary limitation when the plaintiff does not specify what that missing limitation is. Accordingly, I find that the ALJ's failure to include RFC limitations in the two CPP checkbox areas is, at most, harmless error.

As explained above, the ALJ had substantial evidence on which to base his findings regarding specific aspects of Star's CPP limitations. The ALJ considered Star's testimony. R. 21-23. He considered the reports of some of her care providers. R. 23-29. He considered the psychological evaluation that Star completed with Dr. Bard as part of her disability benefits

application. R. 25. He does not need to address each piece of evidence in a 1600-page record individually as long as he has substantial evidence on which to base his findings, although he cannot "ignore a line of evidence that suggests disability." *Pepper*, 712 F.3d at 362, *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). The ALJ has cited evidence that a reasonable mind would find adequate to support his conclusion that Star was not disabled. Two checkbox findings of moderate limitations in particular CPP areas do not render inadequate the substantial evidence that the ALJ cited to support the RFC. Once again, Star has asked me to reweigh the evidence and find that the psychologists' checkbox findings on the MRFC worksheet deserved more weight. Once again, I decline to do so.

### C. The ALJ adequately considered the step-three findings in reaching the RFC.

Star also argues that the step-three findings that she was moderately limited in certain paragraph B criteria should have resulted in additional RFC limitations. However, that argument fails for the same reason as her previous argument: the ALJ did consider her moderate limitations, he included CPP limitations, and his decision was based on substantial evidence. As the ALJ explained in his opinion, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." R. 22. An ALJ is not required to repeat his analysis of the same issue in multiple places. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"). In both section three and five of his opinion, the ALJ evaluated mental limitations. R. 21, 29-30. Just because the analyses at each step technically constitute

different findings by the ALJ (of a non-severe impairment versus an RFC assessment), does not mean that the reasoning is substantially different. As such, I find that the ALJ adequately accounted for Star's moderate paragraph B limitations in addressing the state psychologists' opinion (R. 30) and his other mental health findings regarding Star's memory, concentration, and attention. R. 29.

## II. The ALJ Did Not Err in Declining to Address Star's Absenteeism in the RFC.

Star next argues that the ALJ erred in failing to address her absenteeism. She claims that the high number of doctors' appointments that she attended (twenty-two total in 2013) would preclude her from competitive employment. According to Star, missing work for so many doctors' appointments would constitute absenteeism above a level that an employer would tolerate. I do not need to decide whether so many absences would preclude Star from participating in the workforce because Star has failed to demonstrate that (1) a large number of doctors' appointments constitutes a medical limitation within the meaning of 20 C.F.R. § 404.1545; and (2) that each appointment would have prevented her from working for a full day.

First, I will address the argument that the ALJ should have accounted for Star's need to miss work for medical appointments. The RFC is the maximum that an individual can do despite her physical and mental limitations. 20 C.F.R. § 404.1545. In this way, Star's argument rests on the assumption that her large number of appointments classifies as a medical limitation. Judge Crabb rejected a substantially similar argument in the Western District of Wisconsin. She reasoned that because none of the plaintiff's providers found her unable to work, and because plaintiff "cited no evidence that any particular medical 'contact' was needed to treat one or more of her impairments," the number of doctors' appointments

she attended did not qualify as a medical limitation. *Hoppa v. Colvin*, No. 12-CV-847-BBC, 2013 WL 5874639, at *4 (W.D. Wis. Oct. 31, 2013). She also observed that, "if the 'sheer number of medical visits' were sufficient on its own, claimants could manufacture their own disabilities simply by going to the doctor as often as possible for any or no reason." *Id*. at *5.

Star has not suggested that any of her care providers opined that she was unable to work. In fact, several doctors state otherwise. Her psychologist Dr. Elmergreen noted after one appointment that "[i]t would be good if she could return to productive work." R. 572. Following a subsequent appointment on November 27, 2013, Dr. Elmergreen noted that even if she could not handle her old job, "at least she can work towards finding more suitable employment," and "she is certainly in a position now where she could handle at least light duty." R. 574. Dr. Kessel reported that Star "cannot state unequivocally that [her counselor] told her not to work," and that she "cannot state that (her primary care doctor) told her to be off work." R. 707. It is also not apparent from the record that each of these was necessary for Star's treatment, nor does Star provide any medical opinion evidence that they were medically necessary.[6] Without any evidence to demonstrate the necessity of these appointments, I

---

[6] In Star's brief, she cites twenty-two appointments in 2013 with the dates and the name of the doctor, but not the subject of the appointment. *See* ECF No. 20 at 13-14. On examination, the appointments regard as follows: March 25 with Dr. Haque – assessed with chronic thrombocytopenia and polyclonal gammopathy. R. 753-57; March 27 with Dr. Haque – telephone follow-up regarding scan results. Dr. Haque stated "I do no [sic] think that we need to pursue any further…I will see her back in one year." R. 749; April 11 with Dr. Jourdan – assessed with dizziness and referred to physical therapy. R. 742-45; April 24 with Dr. Bocoun – sought treatment for dizziness, headaches, and pain. Doctor reports Star is "frustrated with the fact that 'no one has been able to come up with a diagnosis.'" R. 735-38; September 12 with Dr. Macaladad – facial injury and neck pain from fall. R. 729; September 12 with Dr. Risa – X-rays of face and spine. R. 727 X-rays show no damage to face or neck and shows "slight loss of disc height at C5-6 which is a nonspecific finding and [the doctor] is not sure if this contributes to her symptoms" R. 724; September 18 with Dr. Petermann – reviewed X-rays of spine. Star was assessed with sclerosis and loss of disc space height. R. 720; September 23 with Dr. Macaladad – "Star presents to the Internal Medicine Clinic to discuss FMLA paper work." R. 717. Referred to psychologist. *Id*.;.September 25 with Dr. Schmelling – forty-five-minute PT appointment for neck pain. R. 713; October 7 with Dr. Kessel – assisted Star in completing short-term disability application for employer, but stated that he could not complete many sections because he was not her treating doctor. *See* R. 706-10; October 23 with Dr. Varma – the "Reason for Visit" says that Star "presents to clinic to establish care." R. 691; October 31 with Dr. Varma – presented with left calf pain and prescribed PT. R. 680-82; November 6 with Dr. Schmelling – called and

cannot say that Star's large number of medical visits is a limitation that should have been built into her RFC.

Furthermore, Star has not demonstrated that each appointment "require[d] her to miss a full day of work or that [s]he could not schedule [her] appointments outside of working hours." *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018). Even assuming that all twenty-two appointments in 2013 were necessary, there is no reason to assume that each appointment results in one full day absent from work. *See Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (finding no reversible error where an ALJ did not consider absenteeism in the RFC based on a plaintiff's speculation that she would miss one day of work for each appointment.). In fact, one of the appointments listed in the brief was actually a phone call, which would likely not require any time off, and another was documented by her doctor to as lasting only twenty-five minutes. R. 749, 738.

Because plaintiff has not offered evidence to demonstrate that frequent medical appointments were an innate limitation from her conditions or that each appointment would result in a day absent from work, I find that the ALJ did not err in declining to consider her purported absenteeism in the RFC assessment.

## CONCLUSION

For all of the reasons explained above, I find that (1) Star has not demonstrated that the ALJ committed reversible error in assessing her RFC; (2) substantial evidence supported

_____

canceled PT appointment. R. 679; November 12 with Dr. Varma – vertigo and fell on right hip. Star also stated that the dizziness did not cause the fall. R. 670-71; December 2 with Dr. Varma – dizziness, hot flashes and palpitations. R. 630-32. The remaining nine appointments were therapy appointments with mental health providers, one of whom opined on several occasions that it would be best for Star to return to work. R. 572, 574.

the ALJ's decision; and (3) Star is not entitled to relief on her constitutional claim. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

      **SO ORDERED** this 12th day of September, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge